CORRECTED VERSION

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Khalilah Suluki,                    )
                                    )
                Plaintiff,          )
                                    )
        v.                          )
                                    )        **CASE NO. 1:21-cv-01156**
Credit One Bank, NA; et al.,        )
                                    )
                Defendants.         )
_____)

## PLAINTIFF'S OPPOSITION TO
## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

I.   OVERVIEW ........................................................................................................... 1

II.  SUMMARY FACTS .................................................................................................. 3

    A.   Eventually, after Attempting to Convince Defendant to Remove the Fraud Account, the Plaintiff Was Forced to Escalate Her Dispute by Contacting the National Credit Bureaus and Making her Disputes under the FCRA. ................... 5

    B.   All Credit One Does in "[I]nvestigating" FCRA Disputes is to "[L]ink"Address and Telephone Numbers in Some Manner to the Consumer. ................................ 5

III. ARGUMENT AND AUTHORITIES ............................................................................. 7

    A.   A Reasonable Fact Finder Could Conclude that Credit One Failed to Conduct a Substantive FCRA Investigation........................................................................... 7

        1.   Section 1681s-2(b) requires a substantive, searching investigation. .............. 7

        2.   Credit One knows data matching is not a reasonable investigation in cases involving identity theft............................................................................. 9

        3.   Credit One would require that a consumer prove a negative and somehow show that they are not the applicant of an account. ............................................. 10

        4.   Credit One makes no effort to distinguish Wood. ........................................ 12

    B.   A Genuine Investigation, Like Credit One Undertook After Plaintiff Sued, Would Have Confirmed Plaintiff Never Authorized or Was Obligated on the Account. 12

    C.   A Reasonable Fact Finder Could Find Defendant's Violation Willful................. 16

        1.   Credit One knowingly violated the FCRA.................................................... 17

        2.   A federal district court has already told Credit One its interpretation of the FCRA was unreasonable....................................................................... 19

        3.   By failing to change its investigation process following Wood, Credit One acted recklessly in violating the FCRA. ............................................................ 22

IV.  CONCLUSION......................................................................................................... 25

<u>**TABLE OF AUTHORITIES**</u>

<u>**CASES**</u>

*Anthony v. Experian Info. Sols. Inc*.,

    WL 1198499, at *5 (E.D. Cal. Mar. 31, 2017) ................................................................ 24

*Ball v. Navient Solutions, LLC*,

    No. 1:16-cv-853-WKW-DAB, <u>2018 WL 1413393</u> (M.D. Ala. Jan. 19, 2018) ............... 28

*Boggio v. USAA Fed. Sav. Bank*,

    <u>696 F.3d 611, 616</u> (6th Cir. 2012) ...................................................................................... 9

*Cahlin v. Gen. Motors Acceptance Corp.*,

    <u>936 F.2d 1151, 1156</u> (11th Cir.1991) .............................................................................. 18

*Centuouri v. Experian Info. Sols., Inc.*,

    <u>431 F. Supp. 2d 1002, 1007</u> (D. Ariz. 2006) ................................................................... 19

*Cortez v. Trans Union, LLC*,

    <u>617 F.3d 688, 721</u>–22 (3d Cir. 2010).................................................................................. 19

*Drew v. Equifax Info. Servs., LLC*,

    C 07-00726 SI, <u>2010 WL 5022466</u>, at *5 (N.D. Cal. Dec. 3, 2010) ................................. 19

*Felts v. Wells Fargo Bank, N.A.*,

    <u>893 F.3d 1305</u> (11th Cir. 2018) ....................................................................... 15, 16, 17

*Fremeau v. Credit One Bank, N.A.*,

    No. 01-19-001-5473 (Am. Arb. Ass'n 2019) .......................................................... 11, 13

*Guimond v. Trans Union Credit Info. Co.*,

    <u>45 F.3d 1329, 1333</u> (9th Cir.1995) ................................................................................. 18

*Healy v. Milliman, Inc.*,

    No. C20-1473-JCC, 2022 WL 1061921, at *4 (W.D. Wash. Apr. 8, 2022)..................... 18

*Hinkle v. Midland Credit Mgmt., Inc.*,

    827 F.3d 1295, 1302 (11th Cir. 2016) ........................................................ 14

*Holmes v. Telecheck Int'l, Inc.*,

    556 F. Supp. 2d 819, 847 (M.D. Tenn. 2008).................................................. 19

*Huebner v. Olum's of Binghamton, Inc.*,

    No. 3:06-CV-1025, 2008 WL 11504869, at *5 (N.D.N.Y. Feb. 28, 2008) ...................... 8

*Johnson v. MBNA Am. Bank, N.A.*,

    357 F.3d 426, 430 (4th Cir. 2004) ....................................................... passim

*King v. Asset Acceptance, LLC*,

    452 F. Supp. 2d 1272 (N.D. Ga. 2006) ....................................................... 28

*Lenox v. Equifax Info. Servs. LLC*,

    2007 WL 1406914, at *6 (D. Or. May 7, 2007) ............................................... 18

*Lewis v. Navy*,

    No. 21-CV-9131 (LTS), 2022 WL 329195, at *2 (S.D.N.Y. Feb. 2, 2022) ...................... 8

*Mintz Fraade L. Firm, P.C. v. Brady*,

    No. 19-cv-10236 (JMF), 2022 WL 1125957, at *3 n.5 (S.D.N.Y. Apr. 15, 2022) .......... 12

*Ngambo v. Chase*,

    No. 20-CV-02224, 2020 WL 1940553, at *3 (S.D.N.Y. Apr. 22, 2020)........................... 8

*Okocha v. HSBC Bank USA, N.A.*,

    700 F. Supp. 2d 369, 374 (S.D.N.Y. 2010)...................................................... 8

*Ostreicher v. Chase Bank USA, N.A.*,

    No. 19-cv-8175 (CS), 2020 WL 6809059, at *5 (S.D.N.Y. Nov. 19, 2020) .............. 16, 17

*Patrick v. LeFevre*,

    745 F.2d 153, 159 (2d Cir.1984)........................................................................ 18

*Payne v. Cornell Univ.*,

    No. 21-109-CV, 2022 WL 453441, at *2 (2d Cir. Feb. 15, 2022)................................... 12

*Safeco Ins. Co. of Am. v. Burr*,

    127 S. Ct. 2201 (2007) ...................................................................................... 19

*Saunders v. Branch Banking & Trust Co. of Va.*,

    526 F.3d 142, 151 (4th Cir. 2008) ............................................................... 19, 20

*Severini v. Penn. Higher Educ. Assistance Agency*,

    No. 18-cv-2775 (ER), 2020 WL 1467396, at *7 (S.D.N.Y. Mar. 25, 2020) .................... 19

*Spector v. Equifax Info. Servs.*,

    338 F. Supp. 2d 378, 390 (D. Conn. 2004)...................................................... 18

*Tescher v. Experian Info. Sols., Inc.*,

    No. 21-CV-02266 (PMH), 2022 WL 564048, at *6 (S.D.N.Y. Feb. 23, 2022) ........... 7, 25

*Trans Union LLC v. Ramirez*,

    141 S. Ct. 2190 (2021) .................................................................................... 26

**STATUTES**

15 U.S.C. § 1681s-2(b) ............................................................................... passim

**RULES**

FED. R. CIV. P. 56(c)(4)................................................................................................................ 5

Plaintiff opposes Credit One's Motion for Summary Judgment. As established in Plaintiff's affirmative Motion for Partial Summary Judgment (ECF 64), the facts cannot be viewed in any other way than to find that Credit One violated the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b). Thus, Defendant certainly cannot show an absence of undisputed facts sufficient for the entry of Summary Judgment on its own motion. For the reasons that follow, the Court should deny Credit One's Motion.

## I.    OVERVIEW

A Federal Trade Commission study concluded that in those cases where the identity theft involved the opening of new accounts or the committing of other types of fraud, of those who knew the thief's identity, 37% of victims identified a family member or relative as the perpetrator. *Identity Theft Survey Report*, Federal Trade Commission, 28 (Nov. 2007). Such cases, especially ones like in this case, are always difficult on family victims.  Defendant's characterization of the theft of its money by Plaintiff's estranged mother as somehow a "family problem" is emblematic of what the Plaintiff has had to go through. Defendant stubbornly refuses to remove accounts from its victims' credit reports when it can connect the accounts to a family member because it believes such theft from Credit One should be the responsibility of others.

Dueling summary judgment motions supported by scores of facts, documents and depositions are a challenge to litigate, and likely a challenge to adjudicate. They appear by the volume of assertions to present disputed facts. But the factual flurry is an illusion. Defendant's own Motion – the one to which this response is made – obfuscates, exaggerates and suggests facts that do not actually apply to Defendant's violations of the FCRA.

No matter how Defendant characterizes its procedures or offers explanations of other parts of its actions on the credit card account in this matter, when it came to the FCRA disputes that are

the subject of this lawsuit – those prosecuted under 15 U.S.C. § 1681s-2(b) – the facts are uncontestable and very simple.  Whatever Credit One may do (or claim to do) to vet the original credit card application against fraud, or consider when it discusses the matter with the fraud victim, it does almost nothing when a consumer's dispute is made pursuant to the FCRA and sent through the consumer reporting agencies. The Court can avoid the cluttered distractions and confirm exactly as herein merely by reviewing the deposition excerpts detailed in Plaintiff's counter-statement of facts. Each dispute was handled the same:  The agent checked Credit One's notes to determine if a previous agent had labeled the account as fraud.  If not, the agent was to do an online LexisNexis search to see if there was any connection between the disputing consumer and the address and phone number used to first open the account. The question here is whether Credit One can win as a matter of law by doing just that – in a case where the disputing consumer had previously lived with the accused estranged family member (sharing an address and home telephone number).

The FCRA violation is not that Credit One originally believed its account was correctly attributed to the Plaintiff. It is not even that it still believes that (though it doesn't). Rather, the violations of §1681s-2(b) are (a) that Credit One refused to conduct a searching, detailed investigation to determine the certain truth as to whether Plaintiff applied for and used its card, and (b) Credit One falsely responded to these disputes by telling the consumer reporting agencies ("CRAs") that in fact it had done such an investigation and conclusively verified that Plaintiff had done so. The question of whether Defendant's actions satisfied the FCRA's requirement of a substantive investigation—a "detailed inquiry or systematic examination"—is not a difficult question. In fact, on nearly identical facts as to Credit One, a sister court—the Eastern District of Virginia—found exactly as Ms. Suluki now asks. *See Wood v. Credit One Bank*, 277 F. Supp. 3d

821, 851–52 (E.D. Va. 2017) (finding "Wood produces admissible evidence sufficient to satisfy the demanding standard for summary judgment as to whether Credit One conducted a reasonable investigation of his disputes.")

*Wood* is on all fours with this case. An estranged mother opened a Credit One account. The consumer disputed repeatedly and Defendant verified because its agents had used LexisNexis to link the estranged mother's address and telephone number to the disputing consumer. In discussions, Credit One's lawyers have responded to *Wood* with the simple, truthful statement, "well, that's not a New York case." And of course, that is true. But the federal law considered in Virginia is the same. The procedures criticized were identical. And the facts so uncanny that the Court should have no difficulty agreeing with *Wood*'s consensus view.

The Court should deny Credit One's Motion. Not only are there multiple issues of disputed, material fact that prevent granting summary judgment to Credit One, the issues of fact so favor Plaintiff that, like Mr. Wood, the Court should grant summary judgment in her favor.

## II.   SUMMARY FACTS

### A.   There is No Admissible or Credible Evidence that Plaintiff Opened or Used Defendant's Account.

Unlike Plaintiff, Credit One does not move on the question of whether Plaintiff was the person who applied for and used its credit card. It can't do that as despite its flurry of justifications for its original belief that the account was accurately attributed, it learned otherwise. There is not one signature of the Plaintiff's connected with the account. Not one phone call where she did anything other than dispute it. No evidence that Plaintiff ever used it. The actual evidence is today so clear that even the litigation declarant used by Defendant for summary judgment purposes testified under oath that as of the date of her deposition in 2021, "Credit One believes it's more

likely than not that the mother opened the account." (Plt.'s Statement of Facts ("PSOF") ([ECF 66](#)), ¶ 9.)

The Plaintiff of course denied application and use and did so under oath using the Fraud Affidavit Credit One sent. (Plt.'s Counter Statement of Facts ("CSOF") ([ECF 71](#)), ¶¶ 12–15.)  And the estranged mother has ultimately admitted to having opened and used the account – her entitlement she believes – testifying under oath, "I can use the card as long as I'm paying the payments and the payments were being paid up until, and even up until the pandemic and stuff things just – right."  (*Id.* ¶ 4.) And, yes, it was the mother that paid on Credit one's account, as she testified, "I made all the payments."  (*Id.* ¶ 5.)

**B.    Plaintiff Contacted Credit One When She Learned of the Account, Has Consistently Disputed That It Was Her Account and Completed and Returned the Fraud Affidavit Defendant Demanded.**

Plaintiff has consistently and forcefully denied opening or using the account from the first moment she learned of it and contacted Credit One. (*Id.* ¶ 7.) And when Credit One sent her its "Fraud Affidavit," she returned the document as requested, attesting under oath that she had not opened or used the account and identifying her mother, by name, as the one who did. But now, in litigation, Defendant manufactures a defense that she also should have provided a different form, an "Identity Theft Report." But according to Credit One's fraud employee, that form is just a different name for the same information and document. (*Id.* ¶ 14.) Defendant however testified that even had the Plaintiff been able to obtain and send a Police Report, it would not have mattered. (*Id.* ¶ 13.)

**C.**   **Eventually, after Attempting to Convince Defendant to Remove the Fraud Account, the Plaintiff Was Forced to Escalate Her Dispute by Contacting the National Credit Bureaus and Making her Disputes under the FCRA.**

When Plaintiff sent her credit disputes to Equifax, Trans Union and Experian, the bureaus each forwarded them to Credit One as "ACDV" disputes, which triggered Defendant's obligations to conduct a FCRA investigation. (*Id.* ¶¶ 16–19.) In each instance, Defendant responded that it had verified the accuracy of its reporting.

**D.**   **All Credit One Does in "[I]nvestigating" FCRA Disputes is to "[L]ink" Address and Telephone Numbers in Some Manner to the Consumer.**

Plaintiff has deposed and discovered the actual dispute procedures used by Credit One when a FCRA dispute like this one is received. (*Id.* ¶ 22.) Credit One's actual dispute investigation procedure was that if "the investigator working this case had investigated and found two solid linking information to state that this account, in fact, is not a fraudulent account and that it does link to the card member," Defendant would respond to the CRA that it had "verified" the previous credit reporting (Ex. 8, Perry Dep. at 22:5–19.) Defendant's dispute agents merely match the identifying information (such as name and address) recently reported to the CRAs with what was that day officially in Credit One's computer – simply data conformity. (*Id.* at 26:1–15, 26:22–27:3.)

Credit One's dispute agents clearly testified as to the steps taken for investigating a consumer's FCRA ACDV dispute.

- The first step was simply reading and understanding the dispute. (*Id.* at 71:19–72:2.)

- For the second step, [The agent] would go ahead, populate [in Credit one's account notes …] that dispute code received along with the ACDV, and I would state what the ACDV address was provided by the card member stating that that address was their best current address.

5

- In the third step, the agent "would state if there was any name discrepancy."

- Fourth, the agent would "go on to my investigation notations here [and …] state 'the credit card shipped to the address on application,' and that application can be found within CAPS [Credit One's computer notes] based on a social search."

- Fifth (and the only substantive step), the dispute agent would seek to "verify that within LexisNexis the telephone and address used to open the account did "link to the card member for a significant amount of time as well as during the time frame this application was received by Credit One Bank."

(*Id.* at 71:19-73:1; *see also* Ex. 11, Seberry Dep. at 61:25–63:18-24, 71:13–22.)

This fifth and largely final step is of limited utility in a familial fraud case like here as all that is checked is the existence of any "link" between the application address and telephone number and the disputing consumer. A LexisNexis report "contains any address that might be connected, any phone number that might be connected; it includes relatives and their contact information[.]" (Ex. 12, Conklin Dep. at 35:19–25). Defendant's use of LexisNexis' website as its sole investigation tool was very problematic. The "associated with this address" information there did not reveal who owned the property at the subject address. It only revealed some "link" between the dispute consumer and an address rather than ownership. (Ex. 8, Perry Dep. at 72:24–73:5.) Such LexisNexis website data would simply list every sibling or family member who used the searched address. (*Id.* at 73:6–12.) "[A]s with phone numbers in LexisNexis, there are often multiple individuals that might be connected to a particular address[.]" (Ex. 11, Seberry Dep. at 74:8–11.)

Telephone "links" are similar as the LexisNexis check does not reveal to whom a telephone number belongs, but rather only that a number has in any way ever been associated with the

consumer. (*Id.* at 72:14–17.) And "it's often when you pull a LexisNexis report that there might be multiple names associated with a phone number[.]" (*Id.* at 72:18–25.) If a telephone number shows up on the LexisNexis website, "that doesn't mean that you have any records that show that she's the person that applied for that phone number or to whom the phone company sends a bill[.]" (Ex. 12, Conklin Dep. at 34:10–21.)

Defendant's new litigation characterization of its dispute process is also rebutted by the practical system imposed on Defendant's dispute agents to work as quickly as possible. Credit One's investigation of Plaintiff's dispute in July 2019 lasted one minute. (Ex. 2, Maragos Dep. at 91:7–11; *see* Ex. 10, Notes by Credit Acct. ID (noting Credit One's agent began the investigation at 11:07, and decided the account belonged to Plaintiff at 11:08).)

Defendant's new found claim that its agents may have done more than the ordinary is not with regard to the FCRA disputes (if even applicable at all to disputes during the time of Plaintiff's). In fact, its declarant, John Perry, expressly testified that he would have done only as detailed above and he testified that had he done more, he would have made note of it within the Credit One records. (CSOF ¶ 28.)

### III.   ARGUMENT AND AUTHORITIES

### A.   A Reasonable Fact Finder Could Conclude that Credit One Failed to Conduct a Substantive FCRA Investigation.

#### 1.   Section 1681s-2(b) requires a substantive, searching investigation.

To establish a claim under § 1681s-2(b)(1)(A), "a consumer must show that (1) a furnisher received notice of a credit dispute from a [credit reporting agency] (as opposed to from the consumer alone) and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation." *Tescher v. Experian Info. Sols., Inc.*, No. 21-cv-02266 (PMH), 2022 WL 564048, at *6 (S.D.N.Y. Feb. 23, 2022) (quoting *Ngambo v. Chase*, No. 20-cv-02224, 2020 WL 1940553,

at *3 (S.D.N.Y. Apr. 22, 2020)).  "In determining whether a furnisher of information has satisfied its obligations arising under Section 1681s-2(b), 'courts have required a 'reasonable investigation.'" *Lewis v. Navy*, No. 21-cv-9131 (LTS), 2022 WL 329195, at *2 (S.D.N.Y. Feb. 2, 2022). As the Court has previously noted, while "[t]he Second Circuit has not interpreted this requirement . . . other circuits and district courts have construed the phrase as assuming a reasonableness standard for judging the adequacy of the required investigation." *Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 374 (S.D.N.Y. 2010) (citing *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426 (4th Cir. 2004) and other decisions); *see Huebner v. Olum's of Binghamton, Inc.*, No. 3:06-cv-1025, 2008 WL 11504869, at *5 (N.D.N.Y. Feb. 28, 2008) ("When information that has been furnished to a credit reporting agency is disputed, data furnishers must conduct a 'reasonable investigation of their records' to verify the disputed information.") (citing *Johnson*).

  *Johnson* remains the seminal decision articulating the standard for conducting a reasonable investigation of a consumer's dispute under § 1681s-2(b). A FCRA "investigation" must consist of more than a cursory review of a dispute and instead, must be a "a detailed inquiry or systematic examination" and at a minimum "requires some degree of careful inquiry by creditors." *Johnson*, 357 F.3d at 430. The Courts of Appeals continue to unanimously follow this "reasonable investigation" standard. *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012) ("We join every circuit to have addressed this duty in holding that the investigation an information furnisher undertakes must be a reasonable one."). As the leading FCRA treatise summarizes, Defendant's data conformity or matching process is insufficient:

> [T]he Fourth Circuit's seminal Johnson opinion and its progeny have established that the substantive inquiry into consumers' disputes required by the reasonable investigation standard is not satisfied by the blatantly inadequate industry practice of conducting a mere "data conformity" review that simply confirms that the disputed information in the CRA computer accurately reflects the information in the furnisher's computer that generated the report in the first place[.]

National Consumer Law Center, FAIR CREDIT REPORTING § 6.10.4.2 (9th ed. 2017), updated through 2022 at www.nclc.org/library.

**2.  Credit One knows data matching is not a reasonable investigation in cases involving identity theft.**

As Plaintiff sets forth in her own summary judgment brief, the FCRA requires that Credit One reasonably investigate her disputes. (ECF 65 at 14.) Data matching is not enough, as the prevailing authorities state that to be reasonable, the investigation must be "a detailed inquiry or systematic examination," and "requires some degree of careful inquiry by creditors." *Johnson*, 357 F.3d at 430. Simply comparing disputed information to that in an account application cannot be reasonable, particularly when the dispute relates to identity theft. Of course, the identifying information in the dispute matches what is in Credit One's records—the identity thief *used that same information to open the account*. As Credit One was previously warned regarding the exact same "address/telephone match" policy:

> It was unreasonable for Credit One to simply match Wood's personal identifiers with those associated with the Account when Wood continued to dispute the Account for years, claiming identity fraud. . . .
>
> Such actions are especially unreasonable when, as here, the alleged identity thief is a family member who could have knowledge of or access to an individual's personal information—including social security number, address, and birthdate—and who might use that information to fraudulently open a credit account.

*Wood*, 277 F. Supp. 3d at 853, 853 n.53.

Credit One ignored this warning. While Credit One attempts to justify its slipshod investigation by describing it with flowery language like "holistic" (ECF 58 at 12), such creativity does not turn a cursory review into something substantive and FCRA-compliant. Nothing in Credit One's brief or statement of facts shows that it ever confirmed that its reporting of the account was accurate. Despite the space Credit One occupies in straining to show how meaningful its

investigation was, it cannot escape that all it did was: agree that the phone number on the ACDVs matched that on the application; check that the address on the ACDVs was "linked" to Plaintiff through an Accurint report; mail statements to that address; and accept payments from an unidentified person. (ECF 58 at 13.) None of this confirms that the account belongs to Plaintiff or, by extension, that Credit One's reporting of it was accurate. As the arbitrator told Credit One in an arbitration that it lost on the same grounds as *Wood*, *Fremeau v. Credit One Bank, N.A.*, No. 01-19-001-5473 (Am. Arb. Ass'n 2019):

> While Credit One may have created a process that gives a veneer of regulatory compliance, that veneer is a false mask for a process that is substantively almost guaranteed to fail. It is also a process that makes any effort by a Credit One customer to rectify account fraud an exasperating and virtually impossible undertaking[.]

(ECF 66-10 at 8.)

### 3.     Credit One would require that a consumer prove a negative and somehow show that they are not the applicant of an account.

All Credit One is really saying in its Motion is that, according to its weak internal controls, it has no reason to think the account is not Plaintiff's. That is like assuming a woman is pregnant just because there is nothing showing otherwise. Section 1681s-2(b) requires that the investigation be a searching inquiry, and Credit One's was not. Credit One verified to the CRAs that the reporting was accurate, again and again, in the face of meaningful evidence—dispute letters, ACDVs, phone calls, and a sworn affidavit, to name a few items—that the account was not Plaintiff's. (ECF 66 ¶¶ 20, 23, 27, 28.) Credit One essentially falsified its dispute results each time it verified the account as belonging to Plaintiff, when all it did was satisfy itself that the three basic pieces of data it checked did not indicate the account was not Plaintiff's. That is not enough.

What the Arbitrator in *Fremeau* stated about Credit One's investigation policies has played out here, again. There is no genuine ability for a consumer to dispute a fraudulent account with

Credit One and have that mistake corrected. Plaintiff's circumstances bear that out—she called, wrote, disputed, provided a sworn affidavit on Credit One's own form, visited the police, filed a federal lawsuit, and gave sworn testimony that she did not open or authorize the account, none of which has convinced Credit One that the account is truly not hers. What more might a consumer do?

Using careful drafting, Defendant has created a declaration for its witness, Kim Maragos, designed to inject misdirection into the record.[1] She makes several statements about what Credit One does regarding disputes, such as staffing levels, how investigators are trained, that it has unnamed procedures in place, it has goals for accuracy, steps investigators supposedly take, and similar non-specific statements. (ECF 62 ¶¶ 3–13.) What Ms. Maragos fails to do is tie any of this complimentary discussion of Credit One's supposed processes to what actually happened in Plaintiff's case. This entire discussion is in the present tense, meaning this is what Ms. Maragos says Credit One does *now*. She in no way states that these same processes, procedures, trainings, staffing levels, or anything were in place at the time Credit One investigated Plaintiff's disputes. (*See generally id.*) Because Credit One claims none of these supposedly "holistic" processes or

---

[1] Credit One attempts to prop up its data conformity investigation process with new, post-deposition testimony of Ms. Maragos, who provided a declaration in support of Credit One's Motion. (ECF 62.) This effort fails for multiple, independent reasons. One, Ms. Maragos testified at her deposition that she has *no genuine idea* what anyone actually did to investigate Plaintiff's disputes. She did not speak to anyone, and all she knows came via document review. (ECF 66 ¶ 32.) She therefore has no personal knowledge about what happened with Plaintiff's disputes.

Further, Ms. Maragos's Declaration confirms that lack of knowledge, as it nowhere states it is based on her personal knowledge. She attempts to hide that fact with careful drafting, explaining that "[i]f called as a witness, I can testify competently as to my knowledge of the facts in this declaration." (ECF 62 ¶ 1.) Stating that someone can testify about things stated in a declaration is a far cry from Rule 56's requirement that the actual contents of that declarations "be made on personal knowledge." FED. R. CIV. P. 56(c)(4). With Ms. Maragos they are not, so the Court should not consider the declaration. *Payne v. Cornell Univ.*, No. 21-109-CV, 2022 WL 453441, at *2 (2d Cir. Feb. 15, 2022) (affirming district court's decision to not consider portions of summary judgment affidavit not based on personal knowledge); *Mintz Fraade L. Firm, P.C. v. Brady*, No. 19-cv-10236 (JMF), 2022 WL 1125957, at *3 n.5 (S.D.N.Y. Apr. 15, 2022) (refusing to consider for purposes of summary judgment portions of affidavit not based on personal knowledge).

procedures were in place when it investigated Plaintiff's disputes, it cannot use them to support a supposed lack of dispute of material fact on its Motion.

       **4.**       **Credit One makes no effort to distinguish *Wood*.**

Plaintiff provided two stark examples of decisions castigating Credit One for the failures of its dispute process—the *Fremeau* arbitration, and *Wood*. While it is no surprise that Credit One would not address *Fremeau* in its Motion, as that is an arbitration decision that occurs—by the design of parties like Credit One—in secret and typically cannot be accessed and presented to courts. It is therefore expected that Credit One would not believe it would have to answer *Fremeau* here. For Credit One not to address *Wood*, however, is remarkable given Plaintiff's Counsel litigated that case against this same defense team, and Plaintiff's Counsel has repeatedly detailed the similarities between this case and *Wood* throughout the course of this litigation.

The commonalities with this case and *Wood* are striking. Both involve the opening of Credit One accounts in the names of individuals by parent identity thieves, both plaintiffs disputed the reporting of the Credit One account to the credit bureaus, both submitted sworn statements showing the accounts were opened without their authorization, both had Credit One's investigations of their disputes consist of just comparing personal information in Credit One's files with that on ACDVs, and neither resulted in a correction of the inaccurate reporting. Credit One changed nothing after the *Wood* court found it to have violated Section 1681s-2(b) of the FCRA as a matter of law, and it subjected Plaintiff Suluki to the identical violative investigation process.

**B.**     **A Genuine Investigation, Like Credit One Undertook After Plaintiff Sued, Would Have Confirmed Plaintiff Never Authorized or Was Obligated on the Account.**

Credit One argues that even had it done more, it would not have verified Plaintiff's claims that she did not authorize the account. (ECF 58 at 14.) Credit One identifies several points that it believes supports those arguments, such as that Plaintiff used her parents' address to receive mail;

12

her mother claims Plaintiff used the "ksaluki@yahoo.com" email address; payments were made on the account; and the mother opened accounts for Plaintiff's sister, among other meaningless supposed facts. (*Id.* at 14–15.) Credit One of course chooses to address collateral issues, whereas it had, in its possession, sufficient information to determine the account was not Plaintiff's.

The problem with Credit One's approach is that it refuses to accept the difference between suspect and believe versus verified. The question is not whether Credit One's belief that its account may have some connection to the Plaintiff.  Rather, the question is whether it has verified this fact. As detailed in Plaintiff's own opening brief, the most thorough discussion of this process was offered by the Eleventh Circuit in *Hinkle v. Midland Credit Management, Inc*., 827 F.3d 1295, 1302 (11th Cir. 2016).  When a furnisher conducts a FCRA investigation, there are "three potential ending points" to such investigation: "(1) verification of accuracy, (2) a determination of inaccuracy or incompleteness, or (3) a determination that the information 'cannot be verified.'" Id. (numbers added). Here, as always apparently, Credit One reported to the CRAs that its investigation had resulted in number (1), that it had verified the accuracy of its reporting. As the Eleventh Circuit explained, "[t]his framework reflects the fact that § 1681s–2(b) is designed not only to exclude false information from credit reports, but also to prevent the reporting of unverifiable information. When a furnisher determines that disputed information is false or 'cannot be verified,' the furnisher must notify the CRAs of this result pursuant to § 1681s–2(b)(1)."  *Id.* Given the lack of proof of the underlying obligation, the furnisher should have "at least informed the credit reporting agencies that [it] could not conclusively verify" the disputed information. *Johnson*, 357 F.3d at 432 (explaining that if a furnisher "at least informed the credit reporting agencies that [the furnisher] could not conclusively verify" that the consumer was the correct obligor, the CRA would have had to "promptly delete that item of information from the consumer's

file or modify that item of information, as appropriate, based on the results of the reinvestigation'").

Plaintiff has cited the seminal and leading decisions applying and interpreting §1681s-2(b), including the primary cases from Courts of Appeals, decisions in this Court and even a detailed applicable case recently applying the statute to Credit One's procedures. In contrast, Defendant has searched and found several orphan cases from distant District Courts considering vastly different facts and claims. From the outset, Credit One misapplies the holding of *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305 (11th Cir. 2018), the case on which it relies for this analysis. *Felts* affirmed a grant of summary judgment in favor of a mortgage servicer, wherein the district court found the plaintiff's Section 1681s-2(b) claim failed as a matter of law because the undisputed facts showed that the servicer's reporting Felts' mortgage account as past due and delinquent while he was on a forbearance plan was neither inaccurate nor materially misleading. *Id.* at 1309. The district court therefore held that Felts failed to make the threshold showing that a reasonable investigation could have uncovered an inaccuracy. *Id.*

In other words, *Felts* presents an analysis based on a binary question: is there a reporting inaccuracy that a reasonable investigation might uncover? If not, then the plaintiff cannot prevail, regardless of what it contends the investigating party should have done. *See Felts*, 893 F.3d at 1313 ("As a result, Felts cannot prevail on her claim against Wells Fargo pursuant to § 1681s-2(b) of the FCRA without identifying some fact in the record establishing that the information Wells Fargo reported regarding her account was inaccurate or incomplete."). Without inaccuracy, the *Felts* analysis falls away and the Court must decide whether what Credit One actually did, (not what it may hypothetically have done) was a reasonable investigation of Plaintiff's disputes. *Ostreicher v. Chase Bank USA, N.A.*, No. 19-cv-8175 (CS), 2020 WL 6809059, at *5 (S.D.N.Y.

Nov. 19, 2020) (citing Felts, and holding "[b]ecause there is no genuine dispute of material fact that Plaintiff's Chase accounts were accurately reported as charged off, written off, and past due, with monthly payment obligations of $0, Plaintiff has failed to make the threshold showing that the challenged credit information is incomplete or inaccurate").

Here, the condition precedent absent from *Felts* and *Ostreicher*—inaccurate reporting—is present. Credit One inaccurately reported the account as belonging to Plaintiff, and falsely verified that reporting to the credit bureaus. Credit One concedes as much, failing to address accuracy anywhere in its brief. (*See generally* ECF 58.) So while there was no inaccuracy in *Felts* for the servicer to discover through its investigation, here there indisputably is. Even Credit One agrees. Given that undisputed fact, the hypothetical what-a-reasonable-investigation-would-have-uncovered analysis from *Felts* is unneeded. *See Felts*, 893 F.3d at 1313 ("As a result, Felts cannot prevail on her claim against Wells Fargo pursuant to § 1681s-2(b) of the FCRA without identifying some fact in the record establishing that the information Wells Fargo reported regarding her account was inaccurate or incomplete.").

Even though the weighing of evidence as Credit One proposes is improper because there is an undisputed inaccuracy here, going through the *Felts* analysis confirms Credit One's failings. First, Credit One had no signed account agreement or anything with Plaintiff's signature on it, such as purchase receipts. Yet these facts meant nothing to Credit One's dispute investigators. Second, Credit One had the IP address of the computer from which the application originated, yet it never used that information to learn that the application came from a New York City school computer, where Plaintiff's mother worked. (ECF 66 ¶ 6, 33.) Third, Credit One had Plaintiff's signed Affidavit of Fraud and Forgery, but its investigators did not consider it as part of their process. (*Id.* ¶¶ 28–30, 38.) Most meaningfully, Credit One's Corporate Representative confirmed

that its litigation-driven investigation confirmed that the mother opened the account, not Plaintiff. (*Id.* ¶ 9.)[2] That should tell the Court all it needs to know about the reasonableness of Credit One's investigations of Plaintiff's disputes.

## C.   A Reasonable Fact Finder Could Find Defendant's Violation Willful.

Under the FCRA, a person who "negligently" violates its provisions is liable for actual damages under 15 U.S.C. § 1681o.  If a jury finds that the violations were "willful," then the defendant can be liable for punitive damages under 15 U.S.C. §1681n. Despite the Second Circuit's longstanding admonition in that "summary judgment would appear to be inappropriate and a trial indispensable" when subjective issues like state of mind are at stake, *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir.1984), Credit One still asks the Court to take from the jury the question of whether its conduct and policies were willful.[3] The Court should decline this invitation to narrowly and unreasonably constrain the FCRA.

Unlike many common law torts, a showing of malice or evil motive is not required to prove willfulness under the FCRA. *Severini v. Penn. Higher Educ. Assistance Agency*, No. 18-cv-2775

---

[2] That witness, Kim Maragos, hopes to now rewrite the unfavorable record. She states in her summary-judgment declaration that although she testified as such in her deposition, she is now "not sure whether Ms. Suluki or her mother opened the Account." (ECF 62 ¶ 18.) While of course grossly improper, Ms. Maragos makes that statement because she supposedly had her mind changed by the mother's testimony about the account origins that conflicted with Plaintiff's. (*Id.*) That conclusion is, to be kind, questionable, as Credit One *always* had a sworn affidavit from Plaintiff, against which there was nothing sworn or even written, that should have convinced Credit One the account was not Plaintiff's. In other words, why does Ms. Maragos suddenly believe sworn testimony, when she had it along? And, of course, there can be no real veracity applied to the mother's testimony, as she was listening to the telecast of a funeral through earphones *throughout her deposition*.

[3] Willfulness is nearly always a question of fact for the jury. *Spector v. Equifax Info. Servs.*, 338 F. Supp. 2d 378, 390 (D. Conn. 2004); *Healy v. Milliman, Inc.*, No. C20-1473-JCC, 2022 WL 1061921, at *4 (W.D. Wash. Apr. 8, 2022) (denying summary judgment on accuracy and investigation claims because "a reasonableness determination for these purposes is generally, by definition, a genuine issue of material fact"); *Lenox v. Equifax Info. Servs. LLC,* 2007 WL 1406914, at *6 (D. Or. May 7, 2007) (reasoning "whether defendant's action or inaction rises to the level of willfulness so as to violate the statutory obligations of the FCRA is also a question of fact"); *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir.1995) (recognizing "[t]he reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases"); *Cahlin v. Gen. Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir.1991); *Centuouri v. Experian Info. Sols., Inc.,* 431 F. Supp. 2d 1002, 1007 (D. Ariz. 2006) (refusing to grant summary judgment on the issue of willfulness in a case involving the reasonableness of consumer protection procedures); *Holmes v. Telecheck Int'l, Inc.,* 556 F. Supp. 2d 819, 847 (M.D. Tenn. 2008).

(ER), 2020 WL 1467396, at *7 (S.D.N.Y. Mar. 25, 2020). A defendant may "willfully violate the FCRA by adopting a policy with reckless disregard of whether it contravenes a plaintiff's rights under the FCRA." *Cortez v. Trans Union*, LLC, 617 F.3d 688, 721–22 (3d Cir. 2010) (citing *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201 (2007)). The "FCRA is concerned with whether the defendant ran an unjustifiably high risk of violating the law." *Drew v. Equifax Info. Servs., LLC*, C 07-00726 SI, 2010 WL 5022466, at *5 (N.D. Cal. Dec. 3, 2010) (emphasis in original).

While here there were at least five over a multi-year period, even a single FCRA dispute can support a willfulness verdict. *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008). And certainly, there was no mistake or human error. Instead, Credit One testified that it intended its employees to follow the exact procedures used to rebuff Plaintiff's disputes. (ECF 66 ¶ 37.) Worse, Defendant testified that it had actual knowledge of the Fourth Circuit's elaboration of a furnisher's FCRA duties in *Johnson* and *Saunders*, because Credit One litigated and lost *Wood*. A jury could fairly find that Defendant knowingly ignored or disobeyed those warnings.

Without even touching on *Wood*, Credit One claims that it is entitled to judgment as a matter of law that it did not willfully violate the FCRA because its interpretation of the FCRA was not objectively unreasonable, and its conduct was not reckless. (ECF 58 at 18–22.) Credit One fails on both points, as well as a third it fails to address. Plaintiff handles that point first.

### 1.     Credit One knowingly violated the FCRA.

Remarkably, Credit One skips over the question of whether it knowingly violated the FCRA, boldly stating that "there is no evidence that Credit One knowingly violated the FCRA, so the Court's analysis should focus on whether Credit One acted recklessly." (ECF 58 at 17.) Wrong. There is substantial evidence that Credit One knowingly violated the FCRA. And since Credit One

omitted any discussion of this element, such undisputed evidence is more-than sufficient for the

Court to deny summary judgment on willfulness without further analysis.

Credit One can simply have no argument that *Wood* does not apply here, so it does not

even try. Yes, *Wood* is an out-of-Circuit decision, but it would be difficult to envision a clearer

message to a furnisher that its investigation procedures were faulty than the detailed analysis the

court provided in *Wood*. There, Credit One sought the same ruling as here—that it did not willfully

violate the Act—based on the same flawed, and unchanged, procedures at issue here. The *Wood*

court found them to be lacking, as a matter of law:

> Credit One received six ACDVs from three different CRAs regarding the Account
> in fewer than two months. For each ACDV, Credit One investigators spent only
> five to fifteen minutes investigating Wood's disputes. Although the investigations
> were not solely internal and were not automated, the investigators did not use
> telephones or contact Wood directly. In Wood's case, the only outside information
> Credit One relied on in its investigations of his multiple disputes was Accurint,
> which it used to confirm that the address on the Account matched an address
> associated with Wood. Each time, after completing an investigation, Credit One
> reported a CCC of XH, indicating that any dispute regarding the account had been
> resolved. Credit One never reported a CCC that would indicate that the consumer
> continued to disagree with the results of its investigations.
>
> Importantly, all of these actions were consistent with Credit One's written policies
> and procedures for investigating account disputes. Once Credit One has completed
> an ACDV investigation, it will not always separately investigate a subsequent
> dispute involving the same issue received within thirty days of the prior ACDV
> investigation and determination. If an account-holder submits an ACDV or other
> dispute claiming that the account was opened due to identity fraud, and
> simultaneously submits a police report, Credit One will "delete the account due to
> fraud." However, if the account-holder submits no police report, and Credit One
> can "link [the account to the account-holder] through multiple . . . systems," Credit
> One will hold the account-holder responsible.

*Wood*, 277 F. Supp. 3d at 846–47 (footnotes and citation omitted). The impact of *Wood* on this

case cannot be overstated, as here Credit One did the same thing with Plaintiff's disputes as it did

with Wood's. And Credit One nowhere argues or provides evidence to the contrary. The *Wood*

court explained to Credit One just what was wrong with its dispute procedures, as a matter of law,

and Credit One did nothing in response to that ruling, and subjected Plaintiff to the identical data-matching process the court addressed in *Wood*. (ECF 66 ¶¶ 52, 58–60, 62–66.) For Credit One to claim that it did not knowingly violate the FCRA after what the court told it in *Wood* is simply not true. Credit One did knowingly violate the Act, ending the willfulness inquiry in Plaintiff's favor.

### 2.    A federal district court has already told Credit One its interpretation of the FCRA was unreasonable.

Even assuming the Court reaches the question of whether Credit One's interpretation of the FCRA was reasonable—an issue the Court should not because of the discussion just above—*Wood* answers that against Credit One too:

> Wood has presented compelling evidence that Credit One's investigations of his disputes were cursory. Specifically, the undisputed evidence shows that Wood submitted six disputes via ACDVs of the Account in fewer than three months. In response to those disputes, Credit One did nothing more than verify each time that Wood's personal information on the ACDVs matched his personal information on the Account, and, three of the six times, Credit One merely compared that personal information to addresses associated with Wood on Accurint.
>
> The undisputed evidence establishes that Credit One spends as few as five and as many as fifteen minutes investigating an individual dispute, and that each investigation of Wood's ACDVs cost Credit One approximately six or seven dollars. Credit One never calls a cardholder who claims true identity theft. And the only information an investigation could produce that would cause Credit One to determine that an individual's account was fraudulently opened is either a police report or a signed affidavit alleging fraud. Finally, Wood has presented undisputed evidence that he contacted Credit One on the phone more than twenty-five times and sent them at least five letters.

*Wood*, 277 F. Supp. 3d at 851–52 (footnote omitted). These shortcomings caused the *Wood* court to hold "the undisputed evidence viewed in the light most favorable to Credit One establishes that Credit One failed to conduct a reasonable investigation of Wood's disputes." *Id.* at 853.

Here again, the lack of change after *Wood* could be found to be willful. A process that was unreasonable as a matter of law then, which went unchanged and Credit One has never claimed was any different as applied to Plaintiff's disputes here, remains unreasonable.

Credit One's arguments should not change things, as it cannot even reconcile them against the evidence presented. It notes, for instance, that it was reasonable to refuse to remove the account from Plaintiff's credit reports because its "procedures generally required an identity theft report (such as a police report or FTC affidavit) before deleting an account because of claimed identity theft." (ECF 58 at 18.) This claim of course ignores that Credit One had Plaintiff's signed, under penalty of perjury, Affidavit of Fraud and Forgery, which Credit One obviously intended to mean something, as it insisted that Plaintiff complete it. (ECF 66 ¶ 28.) Plaintiff did, and Credit One never considered the affidavit as part of its investigation of Plaintiff's disputes. (*Id.* ¶¶ 28–30, 34– 35.) So even by its unreasonable processes, Credit One should have possessed enough information to discontinue its reporting of the account. Any other result was again unreasonable, as a matter of law, just as it was in *Wood*.

Further, Defendant is playing semantics in asserting a claimed interpretation that it should demand an "Identity Theft Report" in addition to its own form Fraud Affidavit.  Plaintiff provided a sworn and completed Fraud Affidavit as sent by Credit One. An "identity theft report" is just another way of saying fraud affidavit.  It contains the same details.  In fact, Defendant itself testified that the Fraud Affidavit WAS an "Identity Theft Report." Its management deponent testified that the only difference was one form is the one you can find at the FTC website, while the other is the form Credit One provides its disputing consumers:

> **Q.** What is different about an FTC identity theft report versus the affidavit that Credit One sends to its consumers for them to complete?
>
> **A.** So they're – they're both essentially identity theft reports. The difference being one comes from the FTC and the other is sent from Credit One Bank to the card member.

(CSOF ¶ 14, Perry Dep. at 70:21–71:4.). Defendant is arguing that it could expect consumers to provide the same information on two different forms, rather than the information on the form Defendant actually mails to consumers such as Plaintiff.

Defendant also knows that its defense is contrived, as during the period the Plaintiff was making her disputes, Credit One would not even remove an account with an ordinary police report. (CSOF ¶ 13.) And Plaintiff tried and could not obtain a police report because she did not have sufficient information about Credit One's account – it was not hers. (PSOF ¶ 28; CSOF ¶ 13.) In contrast, in the cases with decisions cited by Credit One, the consumer did not provide a sworn affidavit. (ECF 58 at 21 (citing *Anthony v. Experian Info. Sols. Inc.*, 2017 WL 1198499, at *5 (E.D. Cal. Mar. 31, 2017) (holding that it would have been "irresponsible" for the defendant CRA to stop reporting information based on the plaintiff's online submission that "contained little to no information" and "was not signed under the penalty of perjury")).)

Defendant's creative new use of 15 U.S.C. § 1681s-2(a) is incorrect for several reasons. First, § 1681s-2(a) does not require the consumer to provide any additional document. It is not a restriction or mandate on the consumer. Instead, all of the provisions within that section are requirements on the furnisher – Credit One. The section provides that if a consumer provides an Identity Theft Report (like Plaintiff did with the Fraud Affidavit), then the furnisher cannot report the account. The reverse is not logically true. The section does not suggest that the furnisher can continue to report unless such a document is provided by the consumer.

Further, § 1681s-2(a) is a different requirement than § 1681s-2(b). *Tescher v. Experian Info. Sols., Inc.*, No. 21-cv-02266 (PMH), 2022 WL 564048, at *6 (S.D.N.Y. Feb. 23, 2022). Section 1681s-2(a) has a long list of different requirements that a furnisher may have to follow, but none have a private remedy. 15 U.S.C. § 1681s-2(c). Only §1681s-2(b) has a remedied

requirement and stands out as well because there is no mention of the prerequisite Credit One demands before it does an investigation.

### 3. By failing to change its investigation process following *Wood*, Credit One acted recklessly in violating the FCRA.

Credit One asks the Court to engage in an evaluation of Credit One's recklessness absent the context provided by *Wood*. Credit One wholly avoids that case, noting that "[b]ased on the information Credit One had, its investigations were not reckless." (ECF 58 at 22.) Obviously, the decision in *Wood* is among the "information Credit One had" at the time it investigated Plaintiff's disputes. Yet, Credit One discounted completely the *Wood* court's holding that its investigation procedures violate the FCRA as a matter of law, addressing Plaintiff's disputes in the identical, violative manner. While in some cases a court may be for the first time deciding whether a defendant acted recklessly, here things are different because a federal court has already told Credit One that its dispute investigation procedures were unreasonable. That finding matters, and tilts the willfulness inquiry significantly in Plaintiff's favor.

Indeed, Credit One's failure to address *Wood* in its opening brief prevents it from meaningfully downplaying that case on reply. It of course knew of the case, as its Corporate Representative testified in a deposition in *Wood*, and should have expected Plaintiff to address it significantly it this brief and her own opening summary judgment memorandum. Yet, Credit One pretends the case does not exist. It does, and the context it provides matters. Given that rational companies take decisions like *Wood* to heart and implement changes when they are handed such a crushing defeat, there are few decisions addressing the issue of a losing defendant committing the same conduct again and attempting to defend it. Trans Union engaged in such conduct, and Justice Thomas addressed it in his dissent in last year's decision *Trans Union LLC v. Ramirez*, 141 S. Ct. 2190 (2021). Trans Union had been sued in 2005 in an FCRA class action over its failure to

properly match consumers to individuals listed on the Treasury Department's Office of Foreign
Assets Control ("OFAC") list of "Specially Designated Nationals." That list includes drug
traffickers, terrorists, human traffickers, and all manner of other nefarious individuals with whom
American companies cannot conduct business. *Id.* at 2215 (Thomas, J., dissenting). The 2005 case
ended with a jury verdict finding that Trans Union's use of name-only matching to report
individuals as matching someone on the OFAC list was a willful violation of the FCRA, which the
Third Circuit affirmed and found that Trans Union's conduct was "reprehensible." *Id.* Trans Union
changed little after that verdict, and in Ramirez was sued for the same thing. Not surprisingly, a
federal jury again found Trans Union to have willfully violated the FCRA, and the Supreme Court
did not disturb that portion of the verdict.[4] This Court should reach the same conclusion as in
Ramirez, that willfulness is cemented by the earlier negative decision and little changes after.

By Credit One's reasoning, it was not reckless in its investigation procedures because
Plaintiff is to blame for its failure to properly investigate. Credit One repeatedly notes that Plaintiff
did not provide a police report (which she could not obtain, by the fault of Credit One) and she
supposedly provided "self-contradictory information" with her disputes (ECF 58 at 23–24), yet
with the ability to fairly describe the substance of its investigations, all Credit One really sets out
is the same data-matching process found violative in *Wood* and a depiction of results that do not
show that Plaintiff is responsible for the account. (*Id.*) At best, all Credit One can muster is a group
of conclusions that suggest to it that there is no reason to find that the account does not belong to
Plaintiff, which is not the same as verifying that the account truly *does* belong to her. Credit One
verified that the account belonged to Plaintiff for each of her disputes, and that was a lie each

---

[4] *Ramirez* is significant because it found that certain members of the classes for which the verdict was obtained did
not have Article III standing to pursue their claims in federal court because their inaccurate consumer reports
(containing OFAC alerts) did not reach third parties. *Id.* at 2210. Here that aspect of *Ramirez* is immaterial, as Suluki's
reports containing the inaccurately reported Credit One account were seen by creditors. (ECF 66 ¶ 48.)

time—Credit One did not so verify. (ECF 66 ¶¶ 60, 63–66.) Such conduct is certainly reckless in light of *Wood*.

Credit One also greatly exaggerates what it actually did, explaining that "Suluki cannot show that Credit One's decision to rely on the information from its vendors created 'a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'" (ECF 58 at 24.) First, there were not multiple vendors to whom Credit One looked for information, just two: (1) Experian, from whom Credit One obtained a Social Security Verification (ECF 59 ¶ 22.iv); and (2) LexisNexis, which Credit One used only to verify phone numbers associated with the account provided by the identity-thief applicant. (*Id.* ¶¶ 35–36.) Credit One cannot play-up its reliance on supposed vendors, when all those vendors did was provide the bare minimum of information Credit One sought to "verify" as to Plaintiff's disputes and the account. This process was insufficient in Wood, and remains so here.

Credit One's case law does not alter the analysis. *King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272 (N.D. Ga. 2006), is not on-point because, in that case, neither the consumer's dispute letters nor the ACDVs included mention of identity theft. *Id.* at 1276. That court found that the furnisher did not act willfully when it responded to a dispute or ACDV that did not mention identify theft by comparing account data with that on the ACDV, and found that the furnisher "did not refuse to investigate, withhold information, or report knowingly inaccurate information." *Id.* at 1280. Here, on the contrary, Credit One did not investigate, and reported knowingly inaccurate information. And none of the facts of *King* occurred in the context of a second lawsuit making identical claims where Asset Acceptance had been told by a prior court that the processes underlying those claims violated the FCRA. If anything, *King* supports Plaintiff's side of these arguments more than it does Credit One's.

The same goes for Credit One's other cited case, *Ball v. Navient Solutions, LLC*, No. 1:16-cv-853-WKW-DAB, 2018 WL 1413393 (M.D. Ala. Jan. 19, 2018). In that case, the furnisher contacted the consumer who disputed student loans claiming them to have been opened due to identity theft, and learned she authorized the first loan. *Id.* at \*5, \*8. While the court concluded that the investigation was not carried out in reckless disregard of the statute, these key facts are absent here. And, like *King*, *Ball* is not a case where the furnisher had a prior federal court decision holding that its investigation procedures violated the FCRA as a matter of law. The Court should therefore lend these cases no weight in its analysis of Credit One's recklessness.

The context brought about by *Wood* matters as to recklessness as well, as it is difficult to understand how a furnisher can be told by a federal court that its processes violate the law, and the furnisher ignores that information. Credit One's failure to revamp the dispute process wholesale following the *Wood* ruling is surely reckless. It therefore cannot prevail on this aspect of its Motion either.

## IV.   CONCLUSION

For the foregoing reasons, Credit One has failed to show that it is entitled to judgment as a matter of law on Plaintiff's claims. The Court should therefore deny Credit One's Motion.

May 10, 2022.                                             Respectfully submitted,

**Khalilah Suluki**

         */s/ Craig C. Marchiando*
Craig C. Marchiando
Leonard A. Bennett (pro hac vice)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Fax
Email: craig@clalegal.com
Email: lenbennett@clalegal.com

25

Abel L. Pierre, Esq.
149 Broadway, 46th Floor
New York, NY
(212) 766-3323 – Telephone
(212) 766-3332 – Facsimile
Email: abel@apierrelaw.com

Attorneys for Plaintiff