UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KHALILAH SULUKI,<br><br>                              Plaintiff,<br><br>                    v.<br><br>CREDIT ONE BANK, NA,<br><br>                              Defendant. | 21-cv-1156 (SHS)<br><br><br>OPINION & ORDER |

SIDNEY H. STEIN, U.S. District Judge.

Plaintiff Khalilah Suluki's ("plaintiff" or "Suluki") claims arise from alleged identity theft perpetrated by her own mother, Khadijah Suluki ("Suluki's mother" or "Khadijah"), whom she claims opened and used various bank accounts in plaintiff's name without her knowledge or permission. (Compl. ¶ 15, ECF No. 1.) Plaintiff alleges that Credit One Bank, NA ("Credit One") either willfully or negligently failed to conduct a reasonable investigation into her claims of identity theft in violation of 15 U.S.C. § 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"), and failed to properly report the results of its investigation to the credit reporting agencies ("CRAs").[1]

Suluki and Credit One have now cross-moved for summary judgment. (*See* ECF No. 58, "Credit One MSJ"; ECF No. 65, "Suluki MSJ.") Suluki seeks partial summary judgment that a) Credit One's reporting to the CRAs that Suluki opened or authorized the account was inaccurate; b) Credit One failed to properly report the results of its investigation to the credit reporting agencies; and c) Credit One's investigation into her claim of identity theft was unreasonable as a matter of law, leaving questions of whether the alleged violations of the FCRA were willful or negligent to a jury. (Suluki MSJ at 2.) Credit One does not seek summary judgment as to the accuracy of its reporting, but does seek summary judgment that its investigation was reasonable as a matter of law. (Credit One MSJ at 12.) Credit One also seeks summary judgment that

---

[1] Plaintiff alleged previously that Credit One "failed to accurately correct and update or delete Plaintiff's information for a period of time subsequent to receiving Plaintiff's dispute from [the CRAs] prior to the commencement of this action as required by 15 U.S.C. § 1681s-2(b)(1)(E)," Compl. ¶ 87, but has not pursued that claim here.

whatever the reasonableness of its investigation, its actions were not willful as a matter of law and therefore do not warrant punitive damages. (Credit One MSJ at 17.)

## I.    History

Plaintiff Khalilah Suluki is a Brooklyn resident and recent college graduate. (Compl. ¶ 13.) In the summer of 2019, Suluki alleges that while attempting to sign a lease after her graduation, she was denied an apartment, leading her to pull her credit reports from the three major credit reporting agencies – Experian, Equifax, and Trans Union. (*Id.* ¶ 13-14.) She was "dismayed to discover that while she was attending college, she was the victim of identity theft, as plaintiff's own mother opened various accounts in plaintiff's name and maxed out some of plaintiff's pre-existing accounts." (*Id.* ¶ 15.) According to plaintiff, while she attended college, her mother "would seize the mail containing the Accounts' billing statements and make a few payments to maintain the appearance that the Accounts were valid when in actuality they were not." (*Id.* ¶ 18.) These allegedly fraudulent accounts were held at three separate banks: Credit One Bank, Capital One Bank, and Comenity Capital Bank. (*Id.* ¶ 16.) Plaintiff claims that, because her "identity was stolen to open [these] account[s]," the information furnished by the banks to the reporting agencies "was at all times inaccurate." (*Id.* ¶ 20.)

Plaintiff claims that upon discovering these "fraudulent debts," she "immediately disputed the debts with either the actual account holders or the credit reporting bureaus." (*Id.* ¶ 17.) She represents that, in late 2019, she sent correspondences to Experian, Equifax, and Trans Union, requesting that the credit reporting agencies "verify and correct the inaccurate, erroneous and unverified representations made by" the banks. (*Id.* ¶¶ 21, 24, 27, 42, 45, 48, 63, 66, 69.) She claims that the agencies furnished her disputes to the banks, which then "failed to reasonably reinvestigate Plaintiff's disputes." (*Id.* ¶¶ 22-23, 43-44, 64-65.) She alleges that she contacted the credit reporting agencies again in April 2020, and once again requested that they verify and correct the inaccurate information. (*Id.* ¶¶ 30, 33, 36, 51, 54, 57, 72, 75, 78.) Again, she claims that after the agencies furnished her disputes to the banks, the banks "failed to reasonably reinvestigate Plaintiff's disputes." (*Id.* ¶¶ 32, 35, 38, 53, 56, 59, 74, 77, 80.)

On February 9, 2021, plaintiff filed this complaint alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* Plaintiff initially brought one claim against each of the three banks – Credit One, Capital One, and Comenity Capital – under 15 U.S.C. §§ 1681s-2(b)(1)(A) and (E), which govern the duties of furnishers of information,

including banks, to CRAs upon notice of a dispute. (*Id.* ¶¶ 88, 100, 111.) Section 1681s-2(b)(1)(A) requires that "[a]fter receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a [furnisher] to a consumer reporting agency, the [furnisher] shall conduct an investigation with respect to the disputed information." Plaintiff claims that "it is evident that" the banks "failed to conduct a reasonable investigation." (Compl. ¶¶ 84, 96, 107.)

As a result of these violations, Suluki claims she "has sustained damages including denial of credit, emotional distress, and mental and physical pain." (*Id.* ¶¶ 88, 100, 111.) Suluki also claims that the violations were willful, rendering the banks liable for punitive damages pursuant to 15 U.S.C. § 1681n, or at least negligent, entitling plaintiff to recovery of actual damages under 15 U.S.C. § 1681o. (*Id.* ¶¶ 91, 103, 114.) She thus requests actual, statutory, and punitive damages, declaratory relief, and costs and fees. (*Id.* ¶¶ 92, 104, 115.)[2]

## II.   Legal Standard

To prevail on summary judgment, a movant must show that "there is no genuine dispute as to any material fact" such that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When both sides move for summary judgment, courts "are required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011). "[I]f the moving party is still entitled to judgment as a matter of law after all the facts alleged by the nonmoving party are resolved in his favor as true, then any remaining factual disputes are neither genuine nor material and will not prevent the court from granting the motion." *Frutico S.A. de C.V. v. Bankers Tr. Co.*, 833 F. Supp. 288, 297 (S.D.N.Y. 1993) (internal citation omitted).

---

[2] Stipulations of voluntary dismissal were entered in late 2021 against defendants Comenity Capital Bank and Capital One Bank. (ECF Nos. 44, 46.) Accordingly, the only defendant remaining in this action is Credit One Bank.

### III.    Relevant Facts

On November 2, 2017, an individual applied for and was issued a Credit One credit card in the name of plaintiff Khalilah Suluki. (Credit One 56.1 ¶ 1, ECF No. 59.) According to Credit One, the account was in use and in good standing for nearly two years, receiving regular, on-time payments, and according to Suluki herself, the account payments were made from a bank account Suluki shared with her mother. (Credit One Opp'n, ECF No. 70 at 4.) On July 20, 2019,[3] plaintiff called Credit One to allege that her mother had opened the account in her name without her permission. (Credit One 56.1 ¶ 8.) Credit One claims that it closed the account, but the outstanding balance remained pending. (*Id.* ¶ 7.) On that call, Suluki asked that she be provided with the completed account application and account statements in order to obtain a police report for identity theft. (*Id.* ¶ 8.) Credit One requested an address and was provided with an address with no apartment number.[4] (*Id.*) Credit One alleges that it mailed the material Suluki requested to the address she provided, but that it was returned as undeliverable. (*Id.* ¶ 9.) Five days later, plaintiff's mother Khadijah called Credit One, alleging that Suluki's claims were untrue. (*Id.* ¶ 10.) Khadijah stated that she and Suluki opened the account together while Suluki was in college; and that Khadijah had agreed to be responsible for the payments to the card to help Suluki build credit. (*Id.*)

On August 15, 2019, Credit One sent Suluki a letter requesting that she complete the Affidavit of Fraud and Forgery it had enclosed and that she provide, in addition, an identity theft report filed with a law enforcement agency within 45 days. (*Id.* ¶¶ 12-13.) Plaintiff signed and returned the affidavit affirming that she had "never applied for the credit card" and identified her mother as the person who did so without her consent or knowledge. (*Id.* ¶ 14, ECF No. 60-7.) She did not provide the identity theft report requested by Credit One.[5] (*Id.*) Suluki alleges she could not obtain an identity theft

---

[3] Suluki alleges she called two or three times in July, (Suluki Tr. 57:11-14, ECF No. 60-1), but the parties at least agree on this phone call.

[4] Suluki claims that she did not provide this address as Credit One alleges. (Suluki Counter 56.1 Statement, ECF No. 74 at 9.) She points to a transcript of a July 6, 2019 conversation with Credit One, which apparently was the first time she raised the issue with the bank, but which Credit One has not acknowledged, in which she asked if Credit One needed her address to investigate, and Credit One said it did not. (ECF No. 74-7 at 12:15-23.) But in the recording of the July 20, 2019 conversation provided by Credit One in its submission, Suluki does indeed provide an address (without an apartment number) to the Credit One representative. (Decl. of Kim Maragos, ECF No. 62-8.)

[5] Suluki insists that because Credit One stated at its deposition that the affidavit Suluki completed is also "essentially [an] identity theft report," defendant cannot point to the lack of the requested identity theft report as a reason not to have investigated Suluki's claims further. (Suluki Counter 56.1 Statement at 14.) However, the affidavit form Suluki completed states: "*in addition* to the affidavit, the following

report filed with law enforcement without the additional information – the account application and monthly statements – that Credit One allegedly refused to provide to her. (Suluki Counter 56.1 at 12.) During this period, someone continued to make minimum payments on the card. (Maragos Decl. Ex. D, ECF No. 62-4 at 23-35.)

On November 10, 2019, Suluki sent typed letters to the three credit reporting agencies stating that her mother had opened accounts with Century 21 and Capital One without her consent, and handwrote into the letters that her mother had also opened a Credit One account without her consent. (Suluki 56.1 Statement, ECF No. 66-4.) She disputed the unauthorized accounts twice each with Trans Union, Equifax, and Experian, who in turn filed Automated Credit Dispute Verifications ("ACDVs") with the banks, four of which contained claims of identity theft. (*Id.*, ECF No. 66-5.)

Credit One received these disputes in late November and early December 2019. (Credit One 56.1 ¶ 26.) Three of the disputes were investigated by contractors, and another was investigated by Credit One Fraud Specialist John Perry (*id.*), who was deposed in this matter and submitted an affidavit attesting to the steps he took. (Decl. of John Perry, ECF No. 61.) Each time, Credit One concluded that the account belonged to Suluki. (*Id.* ¶ 19.) In April 2020, Suluki submitted another letter to the CRAs, and Equifax and Experian submitted additional corresponding ACDVs to Credit One. (Credit One 56.1 ¶ 41.) Credit One received those letters in mid-May. (*Id.* ¶¶ 43, 46.) Defendant repeated its process and, given it had received no new information, came to the same conclusion. (*Id.* ¶ 45.)

Credit One and Suluki largely dispute what Credit One did in its investigation. (Suluki Counter 56.1 at 18-36.) At a minimum, plaintiff concedes that Credit One's dispute agents wrote in Credit One's account notes the ACDV code provided by the CRA, and the current address provided by the consumer in the ACDV. (*Id.* at 20-21.) The dispute agent then checked for any name discrepancy, filled in the address to which the credit card was shipped, and verified that the address and telephone number used to open the account were linked to the card member in LexisNexis for a significant amount of time, as well as during the timeframe the application for the card was received. (*Id.*) Defendant's remaining contentions relating to its investigative process are outlined in its 56.1 Statement. (Credit One 56.1 ¶¶ 20-38.)

---

information is requested: a copy of an identity theft report *filed with your local police department (or other law enforcement agency)*." (*Id.* at 12.) It is undisputed that no identity theft report fitting that description has ever been provided by Suluki.

The account balance was paid in full on or about August 5, 2020. (*Id.* ¶ 47.) Credit One did not hear further from Suluki until this lawsuit was filed six months later. (*Id.*)

## IV.   Plaintiff's Motion for Summary Judgment Is Denied

Suluki seeks summary judgment that a) Credit One's reporting was not accurate; b) Credit One failed to properly report the results of its investigation to the credit reporting agencies[6]; and c) Credit One's investigation into Suluki's disputes was unreasonable. The Court denies Suluki's motion for summary judgment in its entirety.

### a.   Credit One's reporting was not inaccurate as a matter of law.

"A prerequisite for any FCRA claim is that the challenged credit information is incomplete or inaccurate." *Ostreicher v. Chase Bank USA, N.A.*, No. 19-CV-8175 (CS), 2020 WL 6809059, at *3 (S.D.N.Y. Nov. 19, 2020). "This order of proof makes sense: if there is no inaccuracy, then the reasonableness of the investigation is not in play. On the flip side, if there is an inaccuracy, to succeed, the plaintiff must establish that the investigation was unreasonable." *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022).

Suluki asserts that there is no genuine dispute that Credit One's reporting to the CRAs that the disputed account belongs to her was inaccurate. Credit One counters in its motion that "[b]ecause of the conflicting testimony and documentary evidence concerning accuracy, Credit One is not moving for summary judgment on that issue," (Credit One MSJ at 11 n.4), and states in opposition to plaintiff's motion that this issue is not one of law, but is one of fact that must be determined by a jury. (Credit One Opp'n at 3.)

The Court finds that whether Credit One's reporting was "inaccurate" – that is, whether Suluki's mother opened the account *without* Suluki's blessing – is a question of fact in genuine dispute that cannot be resolved at this stage. Almost all of the facts alleged by both parties are consistent with Suluki's mother opening the account in

---

[6] Oddly, plaintiff seeks summary judgment on this claim pursuant to 15 U.S.C. § 1681s-2(b)(1)(C), which does not appear in her complaint. Section 1681s-2(b)(1)(E) does appear in the complaint, but neither party addresses that section in its briefing papers. Plaintiff cannot prevail on summary judgment on her section 1681s-2(b)(1)(C) claim for this reason alone, but the Court also details below why she cannot prevail on the merits of this claim.

plaintiff's name.[7] (*See* Suluki MSJ 2-3.) The dispute is whether plaintiff gave her mother permission to do so on her behalf. The only direct evidence to that effect are the directly conflicting statements from Suluki and her mother.

Contrary to Suluki's assertion that "Credit One has no evidence to rebut [her] testimony," (Suluki MSJ at 10-11), Credit One has produced a call recording (ECF No. 60-5) and deposition testimony (ECF No. 72-1) from Suluki's mother stating that Suluki authorized her to open the account on Suluki's behalf. There is no reason for this Court to credit Suluki's sworn statements over her mother's, particularly when taking the facts in the light most favorable to the nonmovant. Moreover, Khadijah's other daughter Taheerah testified that Khadijah helped *her* get a credit card with Credit One, and that her mother often supported Khalilah and Taheerah this way. (ECF No. 72-5, 26:8-28:11.) "Because 'the credibility of witnesses is exclusively for the determination by the jury,' the Court is not able to resolve the witnesses' conflicting accounts." *Garcia v. Dutchess Cnty.*, 43 F. Supp.3d 281 (SHS), 292 (S.D.N.Y. 2014), *aff'd in part, dismissed in part sub nom. Garcia v. Sistarenik*, 603 F. App'x 61 (2d Cir. 2015) (citation omitted).

Plaintiff relies on *Alabran v. Capital One Bank*, No. CIV.A. 3:04CV935, 2005 WL 3338663 (E.D. Va. Dec. 8, 2005) and *Wood v. Credit One Bank*, 277 F. Supp. 3d 821 (E.D. Va. 2017), in which the courts held as a matter of law that the furnishers' reporting was inaccurate, but the facts in those cases differ from those here in critical ways. In *Wood*, the "identity thief" confessed that the card belonged to her, not the plaintiff. Wood "submitted an affidavit from his mother, Dyan Lollis, 'certifying that the Credit One credit card was opened against the will of David Wood, but instead by Dyan Lollis,' and stating that she 'wish[ed] to have [it] transferred back to the rightful owner Dyan Lollis.' (Lollis Aff. 1.)". 277 F. Supp. 3d at 849. Even in the face of this, Credit One only offered testimony from its own employees saying, "there was nothing to indicate that it was *not* Mr. Wood who, in fact, opened the account"; that it was their "belief" that Wood applied for the card; and a police officer's personal "belief" that Wood was trying to get out of his debt. *Id.* at 850. The court found these were "conclusory statements

---

[7] Credit One admitted at deposition that it is "more likely than not" that Suluki's mother opened the account. (Suluki 56.1, ECF No. 66-2 at 70:10-15.) Credit One attempts to explain this by stating that at the time it made this admission at deposition, it had not received testimony from Suluki's mother swearing to authorization by her daughter, (Credit One Opp'n at 3 n.2), but its statement at deposition is not inconsistent – it merely reflects the likelihood that Suluki's mother opened the account, and that the only remaining question is whether she did so with Suluki's permission.

including no facts on which a reasonable jury could return a verdict in Credit One's favor." *Id.* In contrast, a jury in this case could rely on Suluki's mother's sworn firsthand testimony to return a verdict in Credit One's favor. And in *Alabran*, the undisputed evidence showed that the plaintiff was "at most, only an authorized user of the credit card or cards involved and not liable for the subject indebtedness." *Alabran*, No. CIV.A. 3:04CV935, 2005 WL 3338663, at *4.

"[W]hen the party against whom summary judgment is sought comes forth with affidavits or other material obtained through discovery that generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate. Indeed, it is the very purpose of the trial to establish which party's version of the contested circumstances best comports with reality." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Credit One produced deposition testimony and call recordings creating a genuine dispute of material fact as to the accuracy of its reporting. Viewing the evidence in the light most favorable to Credit One, a reasonable jury could conclude Suluki gave her mother permission to open the account in Suluki's name. This Court cannot find that Credit One's reporting was inaccurate as a matter of law.

> b. There is no private right of action for a furnisher's failure to report an account as disputed to the credit reporting agencies.

15 U.S.C. § 1681s-2(b)(1)(C) requires a furnisher – here, Credit One – to "report the results of the investigation to the consumer reporting agency." Suluki asserts that Credit One was obligated to report to the CRAs that, although it had done what it considered to be verification of the account, Suluki still disputed the account.

But in this circuit, the failure to note an account as disputed is a claim under section 1681s-2(a) rather than under section 1681s-2(b), and there is no private right of action to enforce violations of section 1681s-2(a). Specifically, under 15 U.S.C. § 1681s-2(a)(3), where a consumer disputes the completeness or accuracy of information, the furnisher "may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." However, the FCRA provides that section 1681s-2(a) "shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s of this title." 15 U.S.C. § 1681s-2(d). The Second Circuit has repeatedly affirmed that this precludes consumers from privately enforcing provisions of section 1681s-2(a). *See Sprague v.*

*Salisbury Bank & Tr. Co.*, 969 F.3d 95, 98-99 (2d Cir. 2020) ("As the district court correctly concluded, the FCRA does not provide a private cause of action for violations of Section 1681s-2(a)."); *Longman v. Wachovia Bank*, 702 F.3d 148, 151 (2d Cir. 2012) (per curiam).

Specifically addressing a claim essentially identical to Suluki's, another court in the Southern District recently noted, "Were the Court to allow such a violation to proceed under the guise of a § 1681s-2(b) violation, it would create an end-run around the clear language of the statute and permit a private cause of action for conduct *specifically enumerated* under § 1681s-2(a)." *Tescher v. Experian Info. Sols., Inc.*, 2022 WL 564048, at *6 (S.D.N.Y. Feb. 23, 2022). Thus, despite the plaintiff's assertions in *Tescher* that the furnisher's failure to mark the account as disputed was both "misleading and materially incomplete," "to the extent that Plaintiff intend[ed] to proceed against Defendant on the theory that failing to mark his account as disputed and continuing to report it without that notation [we]re actionable . . . those theories [we]re dismissed as non-actionable duties imposed on furnishers by § 1681s-2(a)." *Id.* Although Suluki cites to out-of-circuit cases that appear to have ruled differently on this issue, the law in this Circuit is straightforward: there is no private right of action to enforce 15 U.S.C. § 1681s-2(a), and that is exactly what Suluki seeks to do here.

Suluki's request for judgment that Credit One violated the FCRA by falsely reporting its investigation results to the CRAs is therefore denied, and since binding circuit precedent dictates that she cannot prevail against Credit One on this claim, this claim is dismissed.

c.   Suluki has not shown, as she must, that any alternative investigation would have led Credit One to a different conclusion.

Finally, Suluki seeks a determination that Credit One's investigation into her disputes was unreasonable as a matter of law. Credit One opposes this, and instead seeks a finding that no reasonable jury could conclude Credit One's investigation was *un*reasonable.

Because this Court has held that Suluki cannot show that Credit One's reporting was inaccurate as a matter of law, a reasonable jury could find that the information reported by Credit One was accurate. In that case, Suluki would not be able to demonstrate that Credit One caused her harm, and the reasonableness of Credit One's investigation would be moot. *See Gross*, 33 F.4th at 1251.

But even assuming the information reported by Credit One was inaccurate, plaintiff cannot prevail as a matter of law because, even taking the facts in the light most favorable to her on the defendant's motion for summary judgment, she has not shown that an alternative investigation would have led Credit One to a different conclusion. *See supra* Section V(a).

Plaintiff's motion for summary judgment is thus denied in full.

## V.   Defendant's Motion for Summary Judgment Is Granted

Credit One contends that whatever factual dispute remains as to the accuracy of its reporting, that fact is not material because its investigation was reasonable as a matter of law, and plaintiff has not shown that any reasonable investigation would have changed Credit One's conclusion. (Credit One MSJ at 11-16.) The Court finds that whatever the reasonableness of Credit One's investigation, no reasonable factfinder could find that plaintiff is entitled to damages under the FCRA, and grants Credit One's motion for summary judgment.

"Under § 1681n, a Defendant who *willfully* violates the FCRA is liable for 'any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000,' punitive damages, and attorneys' fees." *Frederick v. Cap. One Bank (USA), N.A.*, No. 14-CV-5460 (AJN), 2018 WL 1583289, at *10 (S.D.N.Y. Mar. 27, 2018) (quoting 15 U.S.C. § 1681n(a)). "By contrast, pursuant to § 1681o, *negligent* violations of the FCRA entitle a plaintiff to collect actual damages, but not punitive damages." *Id.* Plaintiff "bear[s] the burden of demonstrating the existence of a material factual dispute as to the existence of damages." *Id.* (citation omitted). "Under a willful noncompliance theory, the plaintiff need not show actual damages and is entitled to statutory and punitive damages." *Severini v. Pennsylvania Higher Educ. Assistance Agency*, No. 18-cv-2775, 2020 WL 1467396, at *6 (S.D.N.Y. Mar. 25, 2020).

a)   Actual Damages

There remains a factual dispute about the adequacy of the steps taken by Credit One to investigate Suluki's claims. But Credit One still prevails as a matter of law, because even where a defendant has violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation of the disputed information, summary judgment in favor of the defendant is "still appropriate if no reasonable factfinder could find that Plaintiff is entitled to damages under the FCRA." *Ramirez v. Verizon Commc'ns, Inc.*, No.

13-cv-6000, 2015 WL 917531, at *3 (S.D.N.Y. Feb. 27, 2015); *Frederick*, No. 14-CV-5460, 2018 WL 1583289, at *7. "In order to recover under a negligence theory, plaintiff must establish actual damages *attributable to* defendants' unreasonable investigation." *Okocha v. HSBC Bank USA, N.A.*, No. 08-cv-8650, 2010 WL 5122614, at *5 (S.D.N.Y. Dec. 14, 2010) (emphasis added). In other words, even if the *inaccuracy* of the reporting led to damages to the plaintiff, if there is "no genuine issue of material fact as to whether a reasonable investigation would have revealed that [defendant] reported inaccurate information," then there is no causal connection between the unreasonableness of the defendant's investigation and the inaccuracy that caused the plaintiff damages, and the plaintiff cannot prevail against that defendant. *Jackling v. HSBC Bank USA, N.A.*, No. 15-cv-6148, 2019 WL 162743, at *5 (W.D.N.Y. Jan. 10, 2019).

Although the Second Circuit has not explicitly agreed with this approach, other circuit courts have. *See Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 41 (1st Cir. 2010) (affirming the district court's finding that plaintiff was "required to present evidence of actual inaccuracies in his account that an alternative investigation might have uncovered"); *Gross*, 33 F.4th at 1252 ("Establishing an inaccuracy is not enough, however; [plaintiff] must also show that the inaccuracy was the product of an unreasonable investigation by [defendant]."); *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018) ("Regardless of the nature of the investigation a furnisher conducted, a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that *had* the furnisher conducted a reasonable investigation, the result would have been different; *i.e.*, that the furnisher would have discovered that the information it reported was inaccurate or incomplete, triggering the furnisher's obligation to correct the information. Absent that showing, a plaintiff's claim against a furnisher necessarily fails, as the plaintiff would be unable to demonstrate any injury from the allegedly deficient investigation."). Other circuits have also upheld a requirement in section 1681i cases against CRAs that plaintiffs identify information that a more extensive investigation would have revealed. *See, e.g., Cushman v. Trans Union*, 115 F.3d 220, 226 (3d Cir. 1997) ("'the decisive inquiry is whether [the CRA] could have determined that the accounts were opened fraudulently if it had reasonably investigated the matter'"); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) ("[A § 1681i(a)] claim is properly raised when a particular credit report contains

a *factual* deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry.").

Even taking the facts in the light most favorable to plaintiff, Suluki has not presented any facts showing that, had Credit One taken any of the additional steps she urges, it would have come to a different conclusion. The evidence shows at most that Suluki's mother opened the account in Suluki's name. There is no alternative investigation that would have allowed Credit One to determine that Suluki did not give her mother permission to open the account, short of relying on a police or FTC report to that effect which Suluki never provided.[8] For example, Suluki insists that if Credit One had checked the IP address from which the application was submitted, it would have learned that it was not Suluki who submitted it. (Suluki MSJ at 2.) But the IP address would have told Credit One nothing about whether Suluki gave her mother permission to do so. (Credit One Opp'n at 12-14.) In fact, Suluki worked with Khadijah at the school from which the application was submitted. (*Id.*)

No reasonable jury could find on these facts that Credit One had information available to it that, had Credit One taken additional steps to obtain that information, would have led it to conclude that Suluki did not authorize her mother to open the account on her behalf. This is the distinguishing factor between this case and others cited by plaintiff. In *Wood*, Credit One had evidence before it that ought to have led it to the correct conclusion: the identity thief submitted a written confession that Credit One needed only to accept. 277 F. Supp. 3d at 849. In *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432 (4th Cir. 2004), which plaintiff asserts is the "seminal decision" on reasonable investigations (Suluki MSJ at 15), the court noted that the original account application (which the bank no longer possessed) would have shown that the plaintiff was only an authorized user, and not a co-obligor, on the account. Thus, the court determined that the defendant *could* have verified that the plaintiff was not a co-obligor, had the defendant retained that document. *Johnson*, 357 F.3d at 432.

This case is distinguishable. Suluki has pointed to no one who can corroborate her testimony that her mother did not have her permission to open the account, nor has

---

[8] Credit One's representative at deposition stated that he could not recall anything "other than a police report which would be investigated or an identity theft affidavit in the format that the FTC could make available . . . that would cause Credit One to delete" an account in its report to a CRA. (Suluki Counter 56.1, ECF No. 74-8 at 80:10-17.)

she proffered any piece of evidence that would show she did not give that permission, if Credit One had only retained it or sought it out. Rather, this case is analogous to *Chiang*, in which the only evidence the plaintiff could identify that he alleged should have changed the furnisher's conclusion was the plaintiff's "own telephone calls and letters complaining of the charges." *Chiang v. Verizon New England Inc.*, No. CIV.A.06-CV-12144 (DPW), 2009 WL 102707, at *11 (D. Mass. Jan. 13, 2009), *aff'd*, 595 F.3d 26 (1st Cir. 2010). This Court concludes, as the district court concluded in *Chiang*, that as "a furnisher is not required under the FCRA to rely solely on a consumer's allegations in the absence of other information that would cause a reasonable person to have substantial doubts about the accuracy of the consumer's credit report . . . [and] [a]s [plaintiff] cannot demonstrate that a reasonable investigation *could have* uncovered any such evidence," plaintiff has failed to raise a genuine issue of material fact as to whether the investigation satisfied section 1681s-2(b).

Because Suluki has not alleged any facts suggesting that any additional steps taken by Credit One would have yielded a different result and prevented any damage she suffered, Suluki cannot prevail, and Credit One's motion for summary judgment is granted.

### b) Willfulness

"Even if Plaintiff is not entitled to actual damages, he may still be entitled to punitive damages based on sufficient proof that [the defendant] willfully violated [] the FCRA." *Gorman v. Experian Info. Sols., Inc.*, No. 07 CV 1846 (RPP), 2008 WL 4934047, at *7 (S.D.N.Y. Nov. 19, 2008) (internal citation omitted). "[T]he mere failure to correct a plaintiff's inaccurate credit information, even after notification of the inaccuracy does *not* constitute a willful failure to comply with the FCRA." *Jenkins v. AmeriCredit Fin. Servs., Inc.*, No. 14-cv-5687, 2017 WL 1325369, at *7 (E.D.N.Y. Feb. 14, 2017) (citation omitted). Willfulness can be found on either a knowing or reckless basis. "'[C]onscious disregard or deliberate and purposeful actions [are] necessary to make out a claim for willful noncompliance under the FCRA.'" *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 252 (S.D.N.Y. 2008), *aff'd*, 360 F. App'x 255 (2d Cir. 2010) (citing *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 476 (2d Cir. 1995)).

Suluki has not sufficiently shown that Credit One was willful; she has set forth no evidence of "willful misrepresentations or concealments" that would satisfy this high burden. *Burns*, 655 F. Supp. 2d at 252 (quoting *Pinner v. Schmidt*, 805 F.2d 1258,

1263 (5th Cir. 1987)). "[B]eyond Plaintiff's conclusory statements, [s]he furnishes no evidence that [] the Defendant[] either intentionally misled [her] or acted in reckless disregard." *Frederick*, No. 14-CV-5460 (AJN), 2018 WL 1583289, at *10.

Credit One's motion for summary judgment is therefore granted in full.

**VI.   Conclusion**

The Court grants defendant's motion for summary judgment and denies plaintiff's motion. Because plaintiff has not demonstrated a genuine dispute of material fact as to her entitlement to any remedy under the FCRA, this action is dismissed in its entirety.

Dated:  New York, New York
       March 30, 2023

                 SO ORDERED:

                 Sidney H. Stein, U.S.D.J.